UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOPICS ENTERTAINMENT INC.,

Plaintiff,

v.

ROSETTA STONE LTD.,

Defendant.

Case No. C09-1408RSL

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on "Defendant's Motion to Dismiss, or in the Alternative, to Transfer Action to the Eastern District of Virginia." This was the first action filed; defendant Rosetta Stone Ltd. ("Rosetta Stone") filed a second action later the same day in the Eastern District of Virginia involving the same parties and subject matter. Rosetta Stone contends that the Court should deviate from the first-to-file rule and dismiss this action because it is an improper anticipatory suit. Alternatively, Rosetta Stone seeks a transfer to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). For the reasons set forth in this order, the Court grants defendant's motion to dismiss.

## II. DISCUSSION

**A.  Background Facts.**

Plaintiff Topics Entertainment Inc. ("Topics") is a Washington corporation with its

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 1

principal place of business in Renton, Washington. Rosetta Stone is a Virginia corporation with its principal place of business in Arlington, Virginia. Both companies sell products to assist consumers seeking to learn a foreign language.

On July 24, 2009, Peter Willsey, counsel for Rosetta Stone, sent a cease and desist letter ("July 24th letter") to Topics demanding that Topics discontinue its Instant Immersion product's packaging because its use constituted trademark infringement and unfair competition. He also informed Topics that Rosetta Stone would "pursue alternative measures to protect its valuable trademark and trade dress rights" if Topics did not "provide written assurances by July 31, 2009" that it would comply with Rosetta Stone's request. Declaration of Peter Willsey, (Dkt. #6) ("Willsey Decl."), Ex. A. During August and September 2009, Willsey and Scott Warner, Topics' counsel, discussed the dispute via telephone numerous times.

On September 10, 2009, Willsey sent Topics a second cease and desist letter repeating the demands of the July 24th letter. In that letter, he stated that Rosetta Stone would "pursue alternative measures to resolve [the] matter" if Topics did not comply with Rosetta Stone's demands by September 11, 2009. Declaration of Scott Warner, (Dkt. #16) ("Warner Decl."), Ex. B. Topics provided a written response on September 11, and the parties discussed the dispute on September 15 and 23, and on October 2, 2009.

On October 5th, 2009, Topics' counsel informed Rosetta Stone that Topics "saw no reason to change the color of its packaging, since Topics began using yellow long before Rosetta Stone." Warner Decl. at ¶ 5. After the parties failed to reach an agreement during that conversation, Warner told Willsey that Topics "was prepared to immediately file" a declaratory judgment action in the Western District of Washington. Id. Willsey responded that Rosetta Stone was also ready to file a suit against Topics. Willsey Decl. at ¶ 16. The parties agreed to a standstill in order to allow for more settlement negotiations. Warner Decl. at ¶ 5.

Later that day, Warner telephoned Willsey and told him that Topics' willingness to postpone the filing of its complaint was conditioned on Rosetta Stone's agreement that Topics

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 2

could file first. Willsey responded that he would have to confer with Rosetta Stone about the proposed condition. The parties agreed that neither of them would file until they communicated again.

On October 6, 2009, Willsey sent Warner an e-mail asking if Warner was available to discuss Rosetta Stone's modified settlement proposal at 4:30 p.m. that day. Willsey also suggested that they "agree not to file [their] respective lawsuits [that day]" and asked Warner to "let me know if you agree." Warner Decl., Ex. F. He did not address Topics' proposed condition that Topics be permitted to file first.

After receiving Willsey's e-mail, Warner unsuccessfully tried to call him. He then sent Willsey an e-mail stating that Topics was contemporaneously filing this lawsuit (the "Washington action"). Warner Decl. at ¶ 6, Ex. G. Topics filed its complaint at 11:51 a.m. on October 6, 2009. In its complaint, Topics requested the following relief: (1) a declaration that the packaging of Topics' Instant Immersion product does not infringe on any rights held by Rosetta Stone; (2) a declaration that Rosetta Stone has no trademark or trade dress rights to the color yellow, black font lettering, small blue icons, or pictures of smiling individuals; and (3) a declaration that Topics' use of the phrase "As effective as Rosetta Stone for a fraction of the cost!" is not actionable false advertising. Approximately two hours later, Rosetta Stone filed a lawsuit against Topics for trade dress infringement, trademark infringement, false advertising, and unfair competition in the U.S. District Court for the Eastern District of Virginia (the "Virginia action") .

On November 12, 2009, the U.S. District Court for the Eastern District of Virginia issued an order staying the Virginia action pending the Court's ruling on this motion. It determined that "it is for the court in the Western District of Washington to decide whether the first-to-file rule applies" because the Washington action was filed first. Warner Decl., Ex. J.

**B.     Analysis.**

      **1.     Issue Preclusion**

Topics argues that issue preclusion precludes the Court from deciding whether a deviation from the first-to-file rule is warranted. Because jurisdiction is based on diversity of citizenship, the Court applies the issue preclusion rules of the forum state. Pardo v. Olson & Sons, Inc., 40 F.3d 1063, 1065 (9th Cir. 1994). In Washington, courts apply "federal law to determine the preclusive effect of a prior federal judgment." Id. Under federal law, the party asserting preclusion must show: (1) the issue in the two proceedings is identical; (2) the parties had a full and fair opportunity to litigate the merits of the issue; and (3) determination of the issue was necessary to the court's judgment in the prior litigation. Littlejohn v. United States, 321 F.3d 915, 923 (9th Cir. 2003).

Topics contends that the Eastern District of Virginia court decided that the Virginia action was first filed and that there is no evidence of bad faith, forum shopping, or improper suit warranting a departure from the first-to-file rule. Undisputedly, the Washington suit was the first filed. However, the Eastern District of Virginia court explicitly declined to decide whether the first-to-file rule applies. Instead, it explained, "Having reviewed the record, the Court finds that there is no evidence of bad faith, forum shopping, or improper suit, and that therefore there is no reason to depart from the first-to-file principle that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule applies." Warner Decl., Ex. J (internal citation and quotation omitted).[1] Therefore, because the Eastern District of Virginia court did not resolve the issue, the doctrine of issue preclusion does not bar the Court's consideration of whether a deviation from the first-to-file rule is warranted under the circumstances of this case.

---

[1] Topics' reading of the order as finding no evidence that its suit was "improperly anticipatory" is a mis-reading of the order, which does not contain that language. Topics' Opposition at p. 11. There is no indication in the order that the court considered whether the suit was anticipatory. Moreover, the language regarding no evidence of an improper purpose or forum shopping was directed solely towards permitting this Court to decide the applicability of the first-to-file rule. Also, it is unclear what evidence was before the Virginia court.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 4

## 2. First-To-File Rule

Under the first-to-file rule, a district court may transfer, stay, or dismiss an action when a suit involving similar parties and issues has been filed in another district. Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). A court may deviate from the rule for reasons of equity, such as when the filing of the first suit was anticipatory. Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 627 (9th Cir. 1991). Although the rule should not be disregarded lightly, it includes "an ample degree of discretion, appropriate for disciplined and experienced judges." Id. at 628.

There is no real dispute that the Washington action was filed before the Virginia action and that the actions involve similar parties and issues. Therefore, the question of whether the first-to-file rule applies turns on whether the Washington action was anticipatory as Rosetta Stone contends. An action is anticipatory when the plaintiff files it after receiving "specific, concrete indications that a suit by the defendant is imminent." Gunthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 271 (C.D. Cal. 1998). Anticipatory suits "are disfavored because they are examples of forum shopping." Z-Line Designs, Inc. v. Bell'o Int'l LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003).

In this case, Topics argues that Rosetta Stone never actually threatened litigation and instead vaguely suggested that it might pursue "alternative measures." The record, however, shows otherwise. In the July 24th letter, Rosetta Stone' counsel explicitly stated that the company would "forego legal action" only if Topics agreed to certain conditions. Willsey Decl., Ex. A. The letter further stated that the company would pursue "alternative measures," a threat that was reiterated in its September 10th letter. Id., Ex. B. Rosetta Stone's counsel also threatened litigation during telephone conversations with Topics' counsel. Second Willsey Decl. at ¶ 4 (explaining that he threatened litigation during telephone calls on August 14, August 17, and September 15, 2009). In mid-September, Rosetta Stone's counsel offered in an e-mail to "forego legal action this week," suggesting that a suit was both contemplated and imminent.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 5

Warner Decl., Ex. E. Those communications show that Topics was well aware that Rosetta Stone planned to file suit imminently if negotiations were unsuccessful.

In contrast to those repeated threats of litigation, Topics did not suggest litigation until October 5, 2009, just one day before it filed this lawsuit. Although Topics states that it filed suit only after the parties' negotiations reached an impasse, the record demonstrates that at the time, the parties were still engaged in active settlement negotiations. In fact, on Monday, October 5, Rosetta Stone's counsel promised that the company would provide a new settlement proposal by Wednesday, October 7. Warner Decl. at ¶ 5. Rather than waiting for the proposal, Topics filed suit. Its counsel's e-mail notes the awaited settlement proposal and explains the rush to file suit: "We do want to see Rosetta's proposal . . . . And, as I advised before, we do not want to give up the rights associated with having filed first." Warner Decl., Ex. G. The record shows that while the parties were engaged in active settlement negotiations, Topics became concerned when Rosetta Stone would not agree to permit it to file its lawsuit first and rushed to file its lawsuit. In light of these facts, the Court finds that Topics' lawsuit was anticipatory. Moreover, permitting Topics to gain from its tactic would encourage parties to precipitously abandon settlement negotiations to rush to the courthouse as Topics did.

> Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation.

Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995); see also Z-Line Designs, 218 F.R.D. at 665 (explaining that the Declaratory Judgment Act should not be invoked to deprive a plaintiff of its choice of forum; applying the rule under those circumstances would "thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer."). In this case, Topics' declaratory judgment action was a mirror image of Rosetta Stone's planned suit. Topics' suit did not add any new or additional claims beyond seeking to refute Rosetta's Stone's allegations, which weighs in favor

of finding its suit to be anticipatory.

Furthermore, where, as here, "a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first." Z-Line Designs, 218 F.R.D. at 667. Finally, the fact that the suits were filed only two hours apart supports the Court's decision to depart from the first-to-file rule. See, e.g., id.; see also Ontel Prods., Inc., 899 F. Supp. at 1153 (explaining that the first-to-file rule was "inapplicable" where the suits were filed on the same day). Accordingly, because Topics' suit was anticipatory, the Court finds the first-to-file rule inapplicable and dismisses this action in favor of the Virginia action.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS Rosetta Stone's motion to dismiss (Dkt. # 5) and dismisses this action without prejudice.

DATED this 4th day of January, 2010.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge